UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
ROBERT JENKS,                                               :
                                                            :
                            Plaintiff,                      :
                                                            :       **MEMORANDUM**
                  - against -                               :       **DECISION AND ORDER**
                                                            :
UNITED STATES OF AMERICA, UNITED                            :       18-cv-1454 (BMC)
STATES MARSHALS SERVICE, ANTHONY                            :
FAZIO, and ISN COPORATION,                                  :
                                                            :
                            Defendants.                     :
----------------------------------------------------------- X

**COGAN**, District Judge.

The issue in this personal injury case under the Federal Tort Claims Act is whether a residential tenant who, pursuant to his lease with the United States Marshals Service, contractually assumes responsibility for maintaining the premises, can recover against the United States for injuries he suffers as a result of an alleged unsafe condition on the premises. I conclude that the tenant's express assumption of contractual responsibility subjects him to the "independent contractor defense" by which the sovereign immunity of the United States is preserved. He therefore cannot recover against the United States, notwithstanding New York law that prohibits a landlord from delegating responsibility for maintaining the premises.

## BACKGROUND

The United States Marshals Service acquired custody of a residential property located in Staten Island through a preliminary order of forfeiture in a civil forfeiture action. Plaintiff was a tenant at the time the Marshals Service obtained custody of the property; the civil forfeiture proceeding was against the landlord and owner of the property, defendant Anthony Fazio (who has not appeared in this action). The Marshals Service entered into two agreements relevant here.

First, to allow plaintiff to continue as a tenant, the Marshals Service and plaintiff entered into a new residential lease entitled, "Occupancy and Indemnity Agreement." The term of this lease was "until (30) days after a [final] Order of Forfeiture has been issued by the U.S. District Court or until otherwise notified by the USMS." In addition to paying the Marshals Service monthly rent of $2,075, plaintiff agreed as follows:

> Maintenance. Occupant must maintain the Property, at Occupant's expense, in the same or better condition as it existed on the date of seizure. The word "maintain," includes but is not limited to: (1) keeping the property free of hazards, hazardous materials, dangerous animals, dangerous activities and/or structural defects, keeping all heating, air conditioning, plumbing, electrical, gas, oil, and other power facilities in good working condition; (2) keeping the Property clean and providing all necessary facilities for proper sanitation and waste removal; (3) keeping the Property in conformity with reasonable needs for snow removal, lawn care; and (4) providing any other ordinary and necessary items of routine maintenance.

Consistent with this provision, plaintiff also acknowledged that

> he has examined the Property prior [to] entering into this Agreement, and knows the condition thereof, and that no representations regarding the condition or state of repairs thereof have been made by USMS. Occupant hereby accepts the Property "as is, where is" at the date of the execution of this Agreement.

The lease also contained a disclaimer in favor of the Marshals Service "for any loss or damage resulting to [plaintiff] or his/her personal property that may occur . . . from any defect or malfunction of the Property." Finally, the lease provided that "[t]he enforcement, interpretation, and construction of this Agreement, and all matters relating hereto, will be governed by federal law."

The second contract arose because the Marshals Service (which is obviously not in the business of managing real estate) contracts with third-party managers to take on that responsibility. In a portfolio-management solicitation and contract entered into by Unicor, FPI

(as agent for the Marshals Service) and Information Systems Networks Corp., dated June 18, 2012, ISN agreed to provide a variety of management services for the Staten Island property.

Notably, although ISN assumed sole responsibility for a number of specific tasks concerning the managed property, like snow removal and janitorial services, the agreement also provided that "[t]he USMS and the Contractor will work together to ensure the safe upkeep of the property." However, the agreement went on to provide that: "The Contractor [ISN] shall provide property management, maintenance, and repairs . . . ." The billing records for this property show that ISN, in fact, provided regular property inspections, snow removal, plumbing services, rent collection, yard care, utility payments, installation of doorknobs and locks, hazardous substance removal, boiler repairs, pest removal, and other miscellaneous maintenance tasks. Each time one of these services was provided it was billed to the Marshals Service, as provided in the contract. One of those services was listed as "repair work on deck step and place track grip on all steps to prevent slipping." The United States has also established as undisputed fact in this case that the Marshals Service did not perform any work on the property.[1]

Plaintiff was descending the stairs on the deck of the property "when the second step on the aforesaid deck collapsed, causing plaintiff to fall" and sustain injury. The amended complaint sets forth a single claim of negligence against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), and against ISN and Fazio under the common law, alleging that they were responsible for inspecting, managing, maintaining, repairing and operating the property.

---

[1] To the extent the motion of the United States is based on sovereign immunity, an aspect of subject matter jurisdiction, this Court can consider documents outside the pleadings. See Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002).

## DISCUSSION

The United States has moved to dismiss the amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Under the former, it contends that this Court lacks subject matter jurisdiction over plaintiff's claim pursuant to the doctrine of sovereign immunity.

Except under the Federal Tort Claims Act, a person injured by the tortious conduct of an employee of the United States is no more able to sue the United States for damages than he would have been able to sue the King of England from the 13th century until post-World War II – that is, not at all. See Crown Proceedings Act of 1947, 10 and 11 Geo. 6, c. 44, § 2; United States v. Lee, 106 U.S. 196, 205 (1882).

One aspect of sovereign immunity that the FTCA has preserved is that the United States cannot be held liable for the acts or omissions of its independent contractors. The statute provides that the United States waives sovereign immunity by assuming vicarious liability based on the acts of its employees, 28 U.S.C. § 1346(b)(1), but not for its independent contractors. See 28 U.S.C. § 2671; Roditis v. United States, 122 F.3d 108, 111 (2d Cir. 1997).

New York law has a doctrine that conflicts with the FTCA's exclusion of liability based on the actions of independent contractors. Under New York landlord-tenant law, the owner or landlord of residential premises is prohibited from insulating itself from tort liability; the owner/landlord is deemed to have a non-delegable duty to maintain the premises in a safe condition. See Wynn ex rel. Wynn v. T.R.I.P. Redevelopment Assocs., 296 A.D.2d 176, 181, 745 N.Y.S.2d 97, 102 (3d Dep't 2002); see also Zuckerman v. State, 209 A.D.2d 510, 512, 618 N.Y.S.2d 917, 918 (2d Dep't 1994); Fish v. Estate of Elizabeth M. McCarthy, Inc., 224 A.D. 160, 163, 229 N.Y.S. 674, 677 (4th Dep't 1928).

However, when this conflict arises, the case law is clear that sovereign immunity prevails. The United States is permitted to delegate responsibility for particular obligations that arise under state law, even if that state law would not permit such delegation. See Roditis, 122 F.3d at 111-12; see also Lentz v. United States Air Force, No. CV-17-01660, 2018 WL 3416993, at *4 (D. Ariz. July 13, 2018); Safonova v. United States, No. 15CV5580,s 2017 WL 1030708, at *5 n.1 (E.D.N.Y. Mar. 15, 2017); Squicciarini v. United States, No. 12 CIV. 2386 ER, 2013 WL 620190, at *5 (S.D.N.Y. Feb. 15, 2013).

In Roditis, for example, plaintiff slipped and fell on a patch of ice while walking up steps to a U.S. Post Office. At the time of the accident, a contractor was building an underground parking area at the post office, but was not performing any work on the steps plaintiff slipped on. Plaintiff argued, *inter alia*, that even if his injury had occurred in the area under control by the independent contractor, the United States was still liable because New York tort law imposes a non-delegable duty on landowners to maintain their property in a safe condition.

The Second Circuit concluded that the United States could not be held liable – even under New York law imposing a nondelegable duty – because "any state law nondelegable duty cannot, on its own, override the United States' sovereign immunity from suits for injuries caused by its independent contractors." Roditis, 122 F.3d at 111. The Second Circuit also noted that holding the United States liable in these circumstances would be akin to imposing strict liability on the United States for injuries caused by its independent contractor and that the FTCA does not "extend to liability without fault." Id. at 112 (quoting Dalehite v. United States, 346 U.S. 15, 44-45 (1953)).

The only remaining question in this case is whether, in fact, there was an effective delegation. The United States contends that it made such a delegation not once but twice. First,

5

the lease charged plaintiff with responsibility for maintaining the property in a safe condition. Second, the United States contends, it also contracted with ISN to undertake that responsibility.

If the contract between the United States and ISN was as clear as the United States contends, then plaintiff clearly could not proceed against the United States. That delegation would fall well within the cases permitting delegation of responsibility from the United States to an independent contractor, despite any state law prohibition against that delegation. See, e.g., Safonova, 2017 WL 1030708, at *4 (contract delegated responsibility to "keep the Premises in good order and in a clean, safe condition"); Johnson v. United States, No. 1:11-CV-1035, 2012 WL 2921542, at *3 (N.D.N.Y. July 17, 2012) (contract delegated responsibility to "'maintain the buildings, grounds, roads, sidewalks, and equipment' of the Center in a safe condition").

However, the delegation is not as clear as the United States contends. As compared to ISN, the United States maintained some responsibility for the property. It had to specifically approve all non-routine maintenance for the property. The contract itself phrased the allocation of responsibility under the contract as joint – that the parties will "work together" in ISN's performance of its responsibilities. And if the United States does not fully delegate obligations that it would otherwise have under state law, then it remains responsible for its independent contractor's failure to fulfill those obligations under the FTCA. See, e.g., Squicciarini, 2013 WL 620190, at *4 (examining scope of agreement between United States Army subdivision and a contractor to determine whether the Army had delegated responsibility for clearing acorns off the sidewalk that allegedly led to plaintiff's fall and injury).

I need not resolve whether the independent contractor defense fails to protect the United States from any liability it might have by reason of an incomplete delegation to ISN. This is because the lease between plaintiff and the United States contains no such ambiguity. It charged

plaintiff exclusively with maintaining the premises, and the non-exclusive examples of what constituted maintenance included "keeping the property free of hazards . . . and/or structural defects." Plaintiff assumed the obligation to indemnify the United States if he failed to perform this obligation. And the property was leased to plaintiff in an "as is, where is," condition. I do not think the parties could have made it any clearer in the lease that, under the circumstances alleged in this case, the United States would have no liability to plaintiff.

The only wrinkle is that plaintiff is a tenant, not the kind of real estate management company, like ISN, to which the United States would ordinarily delegate its state law maintenance obligations. Moreover, New York law prohibits a landlord from leasing residential property on an "as is" basis. See N.Y. Real Prop. L. § 235-b (McKinney). The parties have not cited the Court to any case in which the tenant is deemed to be an independent contractor so as to defeat his own premises liability claim, and the Court has not found one.

However, once we recognize the inapplicability of New York's non-delegation doctrine against the United States, I see no impediment to charging a residential tenant with responsibility for keeping the property safe. Plaintiff voluntarily chose to remain in the premises once the United States took custody of it, and could have decided not to remain if he did not want this responsibility. Thus, for example, had plaintiff's guest been injured instead of plaintiff, I see little question that plaintiff would be fully obligated to indemnify the United States against any suit by the guest. The ramifications of that result do not change simply because the injured party is plaintiff himself.

Plaintiff was as much an "independent contractor" as ISN (perhaps more because of his unambiguous assumption of maintenance obligations). The most obvious feature of a lease is that it is, of course, a contract. See George Backer Management Corp. v. Acme Quilting Co.,

7

Inc., 46 N.Y.2d 211, 217, 413 N.Y.S.2d 135 (1978) ("a lease is subject to the rules of construction applicable to any other agreement." Although New York law modifies the parties' freedom of contract in the case of a residential lease, I have shown above that such limitations as conflict with the sovereign immunity of the United States cannot be applied.

In this lease, plaintiff assumed the same contractual obligations as could any other independent contractor. From an economic perspective, his rent should have reflected the additional burden that he assumed of maintaining the property and preventing claims against the United States as landlord. As for the "as is" clause, it seems to me no less effective despite contrary state law than is the United States' delegation of responsibility to ISN despite New York's non-delegation doctrine. The terms of the lease reflect just one more method by which the United States protected its sovereign immunity, and I do not see any waiver of that immunity in those terms that go beyond the limited waiver in the FTCA itself.[2]

## CONCLUSION

The motion of the United States to dismiss the complaint on the ground of sovereign immunity [20] is granted.

This ruling appears to leave no further basis for subject matter jurisdiction over plaintiff's claim against ISN and Fazio except supplemental jurisdiction. In the early stage of a case, as is this one, the preferred disposition is to decline supplemental jurisdiction without prejudice to a plaintiff's pursuit of the claim in state court. See 28 U.S.C. § 1367; United Mine Workers of

---

[2] In light of this disposition, I need not address the United States' other grounds for dismissal.

Am. v. Gibbs, 383 U.S. 715, 726 (1966). Plaintiff and the remaining defendants are required to show cause within 7 days why this case should not be dismissed on that basis.

**SO ORDERED.**

                                                                                          _____
                                                                                                                                           U.S.D.J.

Dated: Brooklyn, New York
        September 9, 2018